UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| HUBERT THORNSBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 15-169-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Hubert Thornsberry ("Thornsberry" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").  [Record Nos. 11, 12]  Thornsberry argues that the Administrative Law Judge ("ALJ") erred in concluding that he is not entitled to a period of disability and disability insurance benefits.  However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

As discussed more fully below, the ALJ properly evaluated the opinions of Thornsberry's treating, non-treating, and non-examining sources.   The record also demonstrates that the ALJ properly assessed the Claimant's credibility.  Further, substantial evidence supports the ALJ's determination that Thornsberry can perform medium work, with some restrictions.  As a result, the Court will grant the Commissioner's motion and deny the relief requested by Thornsberry.

- 1 -

**I.**

On February 11, 2013, Thornsberry filed a Title II application for a period of disability and disability insurance benefits.[1]  [Administrative Transcript, "Tr.," p. 158]  He alleged a disability beginning June 7, 2011.  [*Id.*]  Thornsberry, along with attorney Tina Frederick and vocational expert ("VE") Robert Piper, appeared before ALJ Ronald M. Kayser on April 4, 2014, for an administrative hearing.  [*Id.*, pp. 27–64]  On July 22, 2014, ALJ Kayser found that Thornsberry was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act").  [*Id.*, p. 21]  Thornsberry appealed the ALJ's determination to the Social Security Administration's ("SSA") Appeals Council.  However, the SSA Appeals Council declined the Claimant's request for review.  [*Id.*, p. 1]

Thornsberry was 56 years-old when his alleged disability began, and 59 years-old at the time of the ALJ's decision.  [Tr., pp. 21, 158]  He completed the ninth grade but has not obtained his GED.  Thornsberry previously worked as a truck driver hauling phosphate.  [*Id.*, pp. 32, 181]  After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Thornsberry suffers from two severe impairments: heart and back problems.  [*Id.*, p. 16]  Notwithstanding these impairments, the ALJ determined that the Claimant maintained the residual functional capacity ("RFC") to perform medium work, except that he could only:

> occasional[ly] climb ladders, ropes, and scaffold; frequently climb ramps and stairs; and occasionally balance, stoop, crouch, kneel, and crawl.

[Tr., p. 17]

---

[1]    Although Thornsberry's memorandum also references supplemental security income ("SSI"), the record does not confirm that he filed an application for SSI.  [Record No. 11-1, p. 1]

- 2 -

After considering Thornsberry's age, education, work experience, and RFC, ALJ Kayser concluded that the Claimant could perform a significant number of jobs in the national economy, including: hand packager, machine operator/feeder, and cleaner.  [*Id.*, pp. 20−21]  As a result, the ALJ determined that Thornsberry was not disabled from June 7, 2011, through the date of the administrative hearing.  [*Id.*]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the

- 3 -

Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

- 4 -

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).   In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

### III.

Thornsberry claims that the ALJ erred in concluding that he has an RFC of medium work, with certain constraints.[2]  [Record No. 11-1, p. 9]  Residual functional capacity is "an

---

[2]      The Claimant vaguely "alleges severe impairments consisting of back pain, hypertension, kidney stones, hyperglycemia, hypercholesteremia."  [Record No. 11-1, p. 2]  He also briefly points out that he suffers from depression, as well as a host of other conditions.  [*Id.*, pp. 5, 11]  However, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)).  Although Thornsberry details his medical history [*id.*, pp. 2−3], he does not provide any rationale for why the aforementioned conditions are severe.

An impairment is "severe" if it "significantly limits" a claimant's "physical or mental ability to do basic work activities," either by itself or in combination with other impairments.  20 C.F.R. § 404.1520(c).  Most of Thornsberry's medical history relating to kidney stones, hypertension, hyperglycemia and high cholesterol pertains to before 2011.  [*See id.*, *referring to* Tr., pp. 215, 427, 429, 433]  Thornsberry was still able to work during that time.  Further, in describing his post-2010 medical history, Thornsberry merely lists his diagnoses.  For example, he indicates that he "presented with history of hypertension, hyperlipidemia, diabetes" and that he was "diagnosed" with those conditions and others.  [Record No. 11-1, p. 4]  But a long history of treatment for a condition does not establish a severe impairment.  Thornsberry fails to state how those problems would limit his ability to do basic work activities.  As a result, his mere assertion that he suffered from additional severe impairments is insufficient to support his claim.  *See, e.g.*, *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (deeming "cursory argument" regarding severity of a limitation waived where claimant only "briefly" addressed the

- 5 -

assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 404.1527(d)(2); *Bass*, 499 F.3d at 511−12.  In making this determination, the ALJ considers the medical evidence, the non-medical evidence, and the claimant's credibility.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).  An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  In arguing that the ALJ erred in determining that Thornsberry can perform medium work, with certain restrictions, Thornsberry first asserts that the ALJ improperly discounted the opinion of his treating physician. [Record No. 11-1, p. 2]  Second, he claims that the ALJ improperly accorded greater weight to a non-examining source opinion.  [*Id.*, p. 8]  Third, he takes issue with the ALJ's assessment of his subjective complaints.  [*Id.*, pp. 5−6]  None of these arguments are persuasive.

### A.    Dr. Faughn

Thornsberry contends that the ALJ improperly assigned less weight to treating physician Laura Faughn's opinion than to the opinion of the state agency reviewing physician, Casey Alsop.  [Record No. 11-1, p. 8]  Dr. Faughn stated that Thornsberry was unable to work because he could only: (i) stand and walk for less than two hours per day; (ii) sit less than two hours per day; (iii) occasionally lift five pounds; (iv) frequently lift no

issue, focusing on the "diagnosis"); *Williamson v. Comm'r of Soc. Sec.*, No. 1:14-cv-731, 2016 WL 255033, *4 (S.D. Ohio Jan. 20, 2016).

amount of weight; (v) never bend, stoop, or balance; and (vi) occasionally climb ladders and stairs and use his hands in repetitive actions. [Tr., p. 499] Further, she determined that he would need to be absent from work more than four days per month. [*Id.*]

ALJ Kayser did not accord controlling weight to Dr. Faughn's opinion because it was "excessive compared to her treatment notes" and inconsistent with the record as a whole. [*Id.*, p. 19] Generally, the ALJ must give the treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. § 404.1527(c)(2). However, an ALJ is "not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)).

In determining the appropriate weight to give a treating physician's medical opinion, the ALJ looks to: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the supportability of the opinion; (iv) the consistency of the opinion with regard to the record as a whole; (v) whether the treating source is a specialist in the area of his or her opinion; and (vi) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)−(6).

Here, the ALJ provided a valid reason for discounting Dr. Faughn's opinion, stating that it conflicted with her objective findings. *See Kornecky*, 167 F. App'x at 509; *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112−13 (6th Cir. 2010). [Tr., p. 19] For example, the ALJ explained that Dr. Faughn reported Thornsberry's heart to have "regular rhythm

with no murmur" and that his lungs were "clear with no rales, wheezing, or rhonchi." [*Id.*, *referring to* p. 515]   Further, Dr. Faughn indicated that Thornsberry had showed no respiratory distress and no cardiovascular issues.   [*Id.*, p. 510]   Moreover, she found that Thornsberry's neck was supple, his cranial nerves were intact, and he had no gallbladder stones.   [*Id.*, pp. 510, 519]   Because Dr. Faughn's opinion conflicted with her findings, the ALJ was entitled to give it less weight.   *See* 20 C.F.R. § 404.1527(c)(3).

The ALJ also explained that Dr. Faughn's opinion was inconsistent with the record as a whole.   [Tr., p. 19]   For instance, in January 2011, treating nurse practitioner Mary Landsberger noted no heart murmurs, regular heart rate and rhythm, clear lungs, and no wheezes, rhonchi, or rales.   [*Id.*, p. 425]   She also noted a supple neck and no edema in the Claimant's extremities.   [*Id.*]   While nurse practitioners are considered "other sources" under the regulations and are not entitled to the same controlling weight to which acceptable medical sources are entitled, 20 C.F.R. § 404.1513(d)(1), the ALJ should still give "specific consideration" to their assessments.   *See Cruse*, 502 F.3d at 541.

Subsequently, in January 2013, treating physician Salem Hannah noted no chest pain, claudication, or dyspnea; clear lungs; normal respiratory effort; regular heart rate and rhythm; and no heart murmurs, gallops, or rubs.   [*Id.*, pp. 464–65]   In addition, Dr. Hannah's examination revealed that Thornsberry had a normal range of motion, normal muscle strength, and stability in his extremities.   [*Id.*, p. 466]

ALJ Kayser also reasoned that an X-ray in September 2013 revealed only "mild" problems associated with the Claimant's lumbar spine.   [*Id.*, p. 19, *referring to* p. 474]   More specifically, treating physician Andrew Sparkman determined that Thornsberry had no acute

- 8 -

fracture of the thoracic spine and only a "[v]ery mild wedge deformity of T6 and T7."  [*Id.*, p. 474]  Dr. Sparkman also noted that the Claimant's kidneys were normal.  [*Id.*, p. 483]  It is clear that the objective medical evidence does not support Dr. Faughn's opinion that Thornsberry could not perform any work.  As a result, the ALJ was entitled to discount it.  *See* 20 C.F.R. § 404.1527(c)(4).  Moreover, such an opinion is reserved to the ALJ.  *See* 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-5p, 1996 WL 374183, *1 (July 2, 1996).  Therefore, ALJ Kayser did not err in according less weight to Dr. Faughn's opinion.

> **B.  Dr. Alsop**

Thornsberry argues that the ALJ erred in giving greater weight to state agency reviewing physician Dr. Alsop's opinion.  [Record No. 11-1, p. 8]  Findings of fact made by state agency reviewing physicians are treated as expert opinion evidence of non-examining sources.  S.S.R. 96-6p, 1996 WL 374180, *2 (July 2, 1996).  The ALJ must consider the relevant factors in 20 C.F.R. § 404.1527(c)(2)–(6) in determining the weight to give these opinions.  In appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources.  *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013).

The ALJ accorded more weight to Dr. Alsop's opinion regarding Thornsberry's work constraints because it was more consistent with the treating sources' objective findings, including Dr. Faughn's objective findings.  *See Brooks*, 531 F. App'x at 642.  [Tr., pp. 18–19]  For example, ALJ Kayser noted that Thornsberry's stress test in August 2013 showed "fair exercise tolerance" and "no clear-cut ischemia."  [*Id.*, p. 18, *referring to* p. 475]  Regarding the Claimant's back condition, the ALJ referenced X-rays from August 2013

revealing only "mild disc space narrowing at L5-S1." [*Id.*, p. 19, *referring to* p. 477] He also highlighted that, in January 2013, Thornsberry demonstrated no joint swelling, muscle weakness, myalgia, myositis, or neck pain. [*Id.*, p. 19, *referring to* p. 469] In addition, as discussed above, Dr. Faughn's examination revealed clear lungs and no heart murmur. [*Id.*, p. 19, *referring to* pp. 510, 515] Moreover, Dr. Alsop's opinion was comparable to the opinion of another state agency reviewing physician—Dr. Alex Guerrero.[3] [*Id.*, p. 77] Because the ALJ assessed the consistency of the non-examining source opinion with the record as a whole, he did not err. *See* 20 C.F.R. § 404.1527(c)(4). While certain examinations revealed conditions affecting Thornsberry's heart and lungs,[4] ample evidence

---

[3]    In fact, the ALJ incorporated into his RFC finding some of the additional restrictions noted by Dr. Guerrero. [*Compare* Tr., p. 17 *with* p. 77]

[4]    For instance, Dr. Faughn noted that Thornsberry "awaken[ed] at night unable to breathe" and had frequent heartburn. [Tr., p. 510] She also reported that Thornsberry had joint pain and weakness. [*Id.*, p. 514] However, because such findings seem to be based on the Claimant's subjective complaints, the ALJ was entitled to discount them insofar as they conflicted with Dr. Faughn's other findings and the objective medical evidence in the record. *See Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012). Likewise, Dr. Hannah indicated that the Claimant experienced chills, fatigue, generalized weakness, malaise, lightheadedness, arthralgias, myalgia, and back pain, findings which also largely rely on Thornsberry's self-report. [*Id.*, p. 464]

     Although Dr. Sparkman noted "multilevel degenerative disc disease with disc space narrowing and anterior osteophyte formation," he did not diagnose even mild spinal stenosis, indicating that Thornsberry was only in the early stages of degenerative disc disease. *See Moderate Spinal Stenosis*, LASER SPINE INSTITUTE, *available at* https://www.laserspineinstitute.com/back_problems/spinal_stenosis/moderate/ (last visited August 4, 2016). [Tr., p. 474] Dr. Sparkman also noted that Thornsberry had an ejection fraction of 44% during the stress test. [*Id.*, p. 475] While that range is below normal, it does not confirm diagnosis of heart failure. *See Ejection Fraction*, CLEVELAND CLINIC, *available at* http://my.clevelandclinic.org/services/heart/disorders/heart-failure-what-is/ejectionfraction (last visited August 4, 2016). In any event, these findings do not negate the fact that other substantial evidence supports the ALJ's RFC finding. *See Smith*, 482 F.3d at 876.

- 10 -

supported the ALJ's decision, and the Court will not reweigh the evidence.  *See McClanahan*, 474 F.3d at 833.

### C.    Thornsberry's Subjective Complaints

Thornsberry also seems to assert that the ALJ failed to properly evaluate his credibility.  [Record No. 11-1, pp. 5−6]  The Claimant testified that he lives alone and can cook, clean, bathe himself, and dress himself, but his sister-in-law does most of the cooking.  [Tr., pp. 46, 49]  In addition, he indicated that he can walk a fourth of a mile and lift five to eight pounds.  [*Id.*, p. 49]  Further, Thornsberry testified that he can reach overhead with his left arm but that his right arm goes numb.  [*Id.*, p. 50]  He also claimed that he could only sit for ten to fifteen minutes without shifting and could only stand for ten minutes at a time.  [*Id.*, p. 51]

An ALJ determination regarding a claimant's credibility is entitled to great deference because the ALJ is able to "observe the claimant and judge [his] subjective complaints."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).   However, an ALJ who rejects a claimant's testimony must clearly state his reasons.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The Sixth Circuit has a two-prong test for evaluating subjective allegations.  First, the Court examines whether objective medical evidence confirms the severity of the alleged pain arising from the condition.  *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 990 (6th Cir. 2009).   Second, it examines whether the medical condition can reasonably be expected to produce the alleged disabling pain.  *Id.*  The ALJ followed this test, finding that Thornsberry was credible regarding the nature of his impairments and that those impairments could reasonably be expected to cause the alleged symptoms.  [Tr., p. 18]  He did not find

Thornsberry credible, however, in his claims regarding the intensity, persistence, and limiting effects of the symptoms. [*Id.*]

The ALJ provided six reasons for discounting the Claimant's testimony. First, he noted that Thornsberry offered different reasons why his last job ended. [Tr., p. 19] For example, Thornsberry claimed that he was fired, but he also stated that he quit because he had conflicts with people at work and because his hand numbness caused problems. [*Id.*, pp. 35, 180] Thornsberry's inconsistent self-reports suggest that his impairments were not so restrictive that they caused him to leave his job. *See, e.g., Black v. Comm'r of Soc. Sec. Admin.*, No. 5:11CV2770, 2012 WL 4506018, *10 (N.D. Ohio Sept. 28, 2012) (determining that claimant's credibility was weakened when she stated that she lost her job because she either went to prison or experienced health problems).

Second, the ALJ commented on the Claimant's failure to take any prescription pain medication or comply with diet and exercise restrictions. [*Id.*, pp. 18−19] While an ALJ should not draw inferences about a claimant's symptoms "without first considering any explanations that the individual may provide," S.S.R. 96-7p, 1996 WL 374186, *7 (July 2, 1996), Thornsberry's failure to implement the recommended diet and exercise plans is not attributable to his financial problems. Further, the ALJ's other reasons for discounting Thornsberry's credibility undermine Thornsberry's assertion that "he failed to follow the prescribed course of treatment purely for financial reasons." *See Battice v. Comm'r of Soc. Sec.*, No. 1:12-CV-1389, 2014 WL 1366489, *2 (W.D. Mich. Mar. 31, 2014); *see also McClellan v. Comm'r of Soc. Sec.*, No. 13-12435, 2014 WL 4473869, *7 (E.D. Mich. Aug. 14, 2014).

- 12 -

Third, the ALJ appropriately highlighted the discrepancy between Thornsberry's testimony and the objective medical evidence, discussed in detail above. S.S.R. 96-7p, at *1. [Tr., p. 19]   Fourth, the ALJ discounted Thornsberry's testimony because he was able to work for five years after discovering and being treated for coronary artery disease.   [*Id.*] Other cases suggest that a claimant's ability to return to work after prior treatments or surgeries reduces the claimant's credibility.   *See, e.g., Burnett v. Comm'r of Soc. Sec.*, No. 1:12-cv-366, 2013 WL 2243097, *5 (S.D. Ohio May 21, 2013); *Heythaler v. Comm'r of Soc. Sec.*, No. 09-CV-10267, 2010 WL 3489547, *9 (E.D. Mich. Jul. 30, 2010).   Fifth, ALJ Kayser explained that he observed malingering behavior by Thornsberry when he exited the hearing.   [*Id.*]   Such behavior reduced the Claimant's credibility.   *See Pentecost v. Astrue*, No. 3:12-0154, 2013 WL 2434987, *3 (M.D. Tenn. Jun. 4, 2013).

Finally, the ALJ found Thornsberry's alleged limitations inconsistent with his daily activities.   [*Id.*, p. 19]   An ALJ may consider the claimant's daily living activities in assessing his credibility.  20 C.F.R. § 404.1529(a); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986).  Thornsberry testified that he could cook and clean.  [*Id.*, p. 46]  Due to the ALJ's consideration of those daily activities, he did not err in according less weight to Thornsberry's allegations regarding the severity of his symptoms.  *See* S.S.R. 96-7p, at *3.

While one of the ALJ's six reasons for discrediting the Claimant's testimony *may* not be entirely valid, any error is harmless.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).  Because Thornsberry's testimony conflicted with the objective medical

evidence and his own report of his daily activities, the ALJ did not err in according it little weight.

**IV.**

For the reasons discussed above, it is hereby

**ORDERED** as follows

1.      Plaintiff Hubert Thornsberry's motion for summary judgment [Record No. 11] is **DENIED**.

2.      Defendant Carolyn W. Colvin's motion for summary judgment [Record No. 12] is **GRANTED**.

3.      The decision of Administrative Law Judge Ronald M. Kayser will be **AFFIRMED** by separate Judgment entered this date.

This 5th day of August, 2016.

**Signed By:**

*Danny C. Reeves*   DCR

**United States District Judge**

- 14 -
